and his co-conspirators exceeded authorized access within the meaning of 18 U.S.C. § 1030. This case gives the Court the opportunity to think about whether or not to dismiss the indictment. As a final step in completing our analysis of the case we have decided to conclude it in LPRC Holdings v. Brecca, in which this Court began to define the contours of authorization for section 1030. In Brecca this Court explained that authorization is defined by the actions of the employer. However, in this case the employer had taken no actions to restrict Mr. Brecca's access and therefore there were no limits for Mr. Brecca to exceed. This case is different. In this case, Mr. Nozzle's former employer, Corn Ferry, imposed explicit restrictions on the access that its employees had to its computer system. Were those written and were they signed by the defendant in this case? I beg your pardon, Your Honor? Were those written restrictions? Yes. Yes. Some of the restrictions were in writing. For example, every time the Corn Ferry employee logged on to the Corn Ferry computer system, they would see a notification that said, you need to have specific authority to access Corn Ferry system or information, and to do so without this specific authority can lead to disciplinary action or criminal prosecution. In addition, three of the counts at issue involved the use of the custom report feature of the searcher database. Every time someone logged on to the searcher database and tried to access the custom report feature, they saw another banner that said, this product is intended to be used by Corn Ferry employees for work on Corn Ferry business only. These are restrictions that Mr. Nozzle's co-conspirators violated when they accessed the Corn Ferry computer system for purposes of obtaining information to start a competing business. How do you get around Brecca? The government believes that Brecca is consistent with our interpretation of exceeds authorized access in this case. Brecca was dealing with a situation where there were no restrictions on access. And what the Court was really focusing on is whether Mr. Brecca acted without authorization with meaning of Section 1030. The Court concluded that he had not because he was authorized by his employer to use the computer system. There are two prongs. There's without authorization is one, and the other is exceeds authorized access. Yes, that's correct. That's the distinction? Yes. And Brecca really focused on the contours of the first prong, the without authorization prong. Well, I'll telegraph something to the other side. Brecca even says, quote, an individual who is authorized to use a computer for certain purposes, which is italicized in the district court, but goes beyond those limitations as considered by the CFAA as someone who has exceeded authorized access. Doesn't Brecca open the door for this case? Yes, it does, Your Honor. I disagree with you. Does this create a circuit split that has to be resolved by the Supreme Court? Well, there is a – there would be a conflict between this case and Brecca if the Court were to decide against this. And then there's also the reason 11th Circuit decision in United States v. Rodriguez, which was the subject of a 28-J letter submitted by the Court. It supports your position. It does support our position, yes. In that case, a Social Security Administration employee had access to very sensitive data on the Social Security Administration database for purposes of doing his job. But he was told that he could only access that information for business purposes. Instead, he accessed that information for purposes of looking up information about people he knew, and in some cases then showing up on their doorstep or sending them flowers or doing other things like that. And the 11th Circuit had no problem determining that he had, in fact, exceeded authorized access. The district courts waved off the part that I read to you as dicta. Do you have any reaction to that? And even if so, does it make any difference? Well, Brecca was squarely addressing the without authorization question. It discussed exceeds authorized access in order to help reach a way to define without authorization. But it wasn't squarely a part of the Court's holding. But even if this Court were to follow that language and consider it to be binding, it would be wholly consistent with the government's position and would be, the language you quoted, would be inconsistent with the argument that the defendant, Mr. Nosel, has presented. An analogy to the physical world could be helpful in this case to explain the difference between the argument that the government is making about this provision and the argument that Mr. Nosel is making. Say, for example, that a homeowner hires someone to walk her dog during the day while she's at work. And she gives the dog walker a key to her home and says, you may use this key to let yourself in and out of my home in order to pick up the dog at the beginning of the walk and drop the dog off at the end of the walk. In the government's view, the homeowner would have authorized the dog walker to enter her home, but only for the limited purpose of walking the dog. So the dog walker would not be entitled to enter the home for another purpose, for example, to spend the day watching television or to invite his friends over for a party. In Mr. Nosel's view, however, the fact that the homeowner gave the key to the dog walker means that the dog walker is entitled to do whatever he wants to in the system, despite the fact that the homeowner had placed restrictions on the authority to access the system. This is a case where the plain text of the statute makes it clear that Congress did not intend to differentiate between types of restrictions when it was dealing with the question of exceeds authorized access. If you go beyond the restrictions, you have exceeded. And based on that plain text, the government believes that this Court should reverse the district court's dismissal of counts 2, 4, 5, 6, and 7 of the indictment. If the Court has no further questions at this time, I'd like to save my time. Are there courts, are there cases from other circuits that are contra? It seems to me that the two ones I've found, the Fifth and the Eleventh Circuits are consistent with your argument. Is that right? Yes, that's correct. Are there any contra? On the issue that's squarely before the Court, I'm not aware of any, Your Honor. Thank you. You may reserve the rest of your time. Thank you, Your Honor. Mr. Reardon. Thank you, Your Honors. Dennis Reardon and Ted Samsel-Jones for Appelli-Nosel. Your Honors, the district court did not dismiss all of the CFAA counts here under 1830a4. It made a distinction between three counts in which it held that the complaint of the indictment had alleged that someone who was not authorized to enter this computer by borrowing a password entered the computer, and it held that that stated an offense under the statute. And the question was who did it? Right. And that's yet to be resolved in a trial context, whether those counts stand up or not. But it said. So what's your point? It doesn't make any difference because there's still some counts that can be used? No. Your Honor, all I meant to do was say that it drew a clear distinction between unauthorized access to a computer by someone not unauthorized which states an offense under the statute and authorized access to information in the computer but unauthorized use. How do you deal with a language that I telegraphed to you that pretty much says that, you know, if you've got a bad purpose, that exceeds authorized access? That either is a holding or if it's not, it tells us that the Breka case is not controlling because it didn't deal with the issue that we're dealing with now. Well, Your Honor, I think the controlling language of the critical language on Breka on this is that someone exceeds authorized use if they have access, authorized access to a computer, and they have access to a computer, they have access to a computer, they can access information, they obtain or alter information that they are not authorized to obtain. So it's the call it Poseidon and Neptune portions of a computer, different files. If they're entitled to get into the computer and get into the Poseidon files and they get in the Neptune files, then they can fairly be said to have violated the statute. That's not what the language seems to say. It says for purposes, which goes beyond those limitations. And isn't that what we have in this case? Apparently what I read is that your client was told you can do it for X purpose but not for Y. And the allegations is that your client did it for Y. So, therefore, this language in Breka seems to say that that can be enough. Well, Your Honor, again, I think the central holding of it is did you obtain or alter information that you were not allowed access to? That, I hold, is the holding of Breka to the extent that it deals with the authorization prong. Your Honor, the government, it is true that the government's position is that if you access information you're entitled to access for an impermissible purpose, then you have violated the statute.   Now, I hate to keep jumping up and down on this, but isn't that what the language says in Breka, that the district court quotes? I'll read it again, you know, authorized for purposes but goes beyond those limitations. Well, the limitation, Your Honor, I submit that the limitations are the limitations on the access, on the information that you can access. Per se. Per se. Right. But, Your Honor, I think that What do you do with the other circuits that disagree with you? Well, I They're wrong? The situation here, Your Honor, is that everyone knows that at some point this is going to have to be resolved at the Supreme Court level. Not if we agree with the other two circuits? Not if we agree with the other two circuits? Well, I think it's impossible to reconcile the other two circuits with the Breka decision, Your Honor. I think we have a situation here that you're right about this, Your Honor. Those three counts are not terribly important. Five counts are not terribly important to the government in this case. What's going on here is there is a test of what the meaning of the CFAA and these sections are. They don't need them in this case. Breka has ruled Breka has drawn a distinction, I submit, Your Honor, between access, unauthorized access and authorized access and unauthorized use of the information. The word purpose, Your Honor, I agree is critical in this sense. The government has said here that if you get into a computer that you're perfectly entitled to get into, but do it for a purpose that your employer has said is not appropriate, such as any nonbusiness purpose, you have violated the statute. And that's what your client is alleged to have done here. That's right. And the 84 version of the statute specifically said if you access a computer for an unauthorized purpose, you violate the statute. Are we dealing with the 84 version of the statute? No, we're dealing with the 86 version of the statute. And the word purpose was deleted from that statute by the 86 amendment. So the very deletion of the term purpose as a defining characteristic of an illegal access, Your Honor, I submit is critical to the proper interpretation of the 86. You're imputing rationality to Congress. Well, there's that. But we are the reality. Apply that specifically now in the light of your argument on purpose. Right. Take us through that language right now, if you don't mind. In the 1986 amendments to the CAFAA, Congress substituted the phrase exceeds authorized purpose for the phrase, quote, or having access to a computer with authorization uses the opportunity such access provides for purposes to which such authorization does not extend. So prior, in 1984, the statute was written, if you use the opportunity that authorized access gives you for a purpose to which such authorized does not extend, which would be any nonbusiness purpose, you have violated the statute. That was the kind of uncertainty that Congress intended to clarify by using exceeds authorized purpose access and deleting the word purpose. And what we're talking about here, Your Honor, is that in the government's view, we have seen an incredible wave of Federal criminality in the last month because millions of people across this country were accessing their business computers to follow the events in Egypt. Those were nonbusiness purposes. We are about to see a wave of Federal criminality beyond all imagination next month because it's the Sweet 16. And we know that tens of millions of people all across this country use their business computers not only to follow the events of the Sweet 16, but to bet on them. The loss of productivity is said to be billions of dollars. But if Congress intended to turn all of those people into a felon because they have used their computers, even with a caption above it that says, don't use this for any business purpose, if it intended to felonize all of those acts, to use the words of skilling, it has to do it in words more clear and explicit. But, Mr. Reardon. Go back to 1030A4. This is the current language. Yes. The one that's applicable in this case. Yes. Knowingly and with intent to defraud, access a protected computer either without authorization or exceeds authorized access. Isn't that all we're talking about? Exactly, Your Honor.  And how can you get around exceeds authorized access when it the access to a computer was clearly unauthorized in this case? No.  The access, Your Honor, was never unauthorized. In other words, if someone had been looking at these computers and watching them, they would see an authorized person enter an authorized file. Right? No question there. The government's position is that even though this employee has a perfect entitlement to get into that file and to access that data, because they were doing it for an improper purpose. So we just ignore the word exceeds? Not at all, Your Honor. If they get into a computer, and this is the distinction that's been drawn in the cases, if they get into a computer and go into a file that they are not entitled to access, they have authorized access to the computer, but not authorized access to the file. And therefore, they have violated the statute. But if they get into a file as to which they have authorization to access the file and access the information, but do it for an improper purpose, that is not a Federal crime. And therefore, when people get into their computers every day and look at ESPN, they have authorized access to the computer. They have authorized access to the e-mail. They may be doing it for a non-business purpose, but that is not a Federal felony. Well, of course not, because it requires knowingly and with intent to defraud. That's the problem with your tantalizing example. If you're looking for information on the suite 16 or what's going on in Egypt, and there's no intent to defraud, there's no crime. Well, Your Honor, an intent to defraud is the fact of the matter is that if you access a computer for several hours a week, you are in fact depriving an employer of ---- I spent 23 years filing cases. This case wouldn't get through the door on intent to defraud. Well, what ---- Intent to defraud. Your Honor, I mean, this is precisely the problem. When you criminalize everything ---- This isn't criminalizing unless there's an intent to defraud. And if there is an intent to defraud, maybe it ought to be a crime. Well, an intent to defraud can simply be charged as an intent to deprive your employer of the ---- Honest services? I'm not so sure. Well, you don't have to get to honest services, Your Honor, of the monetary value of the services that are involved when you're accessing the computer. But, Your Honor, I submit that the distinction between access, which is impermissible and ---- It's no different than burglary. You can go in and out of a house all day long as long as you don't have the intent to commit a felony in the house or theft. It's not a burglary. No, it's ---- You don't criminalize all entries into a house. It's a trespass. You look at the intent. It's a trespass. That's why it starts out with the intent. No, and the intent can make a difference. Without the intent, it's not a crime. But unauthorized acts, Your Honor, I don't think that you can use the intent element of the statute. Do you think I'm committing a crime if I use my Federal computer to look to see what's going on in the basketball games? Absolutely not, Your Honor. Absolutely not. If you have access ---- However, if I were to go into your office and do the same thing, I would be committing a Federal crime because I'm not supposed to access that computer at all. That's the distinction between criminality and not criminality. But the distinction here is between information you are not allowed to access and using it for an improper purpose. And let's say this. I mean, what is the definition of what becomes a nonbusiness purpose? What element of the crime do you have to prove in order to do that? Does there have to be a written waiver? Can the banner that just says only use computer for business purposes be sufficient to criminalize the entry? Mr. Redden, thank you very much. Your time has expired. Thank you, Your Honor. We'll hear from the government. Was there any subsequent history to BRCA? Did anybody try to take that to the Supreme Court? I don't believe that BRCA was ---- I'm not sure what the civil litigants in that case did. It's possible that they tried to take it to the Supreme Court, but the Supreme Court ---- There's no activity as far as I can find. I'm not aware of any activity, Your Honor. What about the argument that counsel made? If you look back at the original language that has purposes in there and then you look at the new language, it's different, and we can't just assume that Congress didn't mean something when it did that. So what's your response to Mr. Redden's argument there? Well, the 1986 Senate report, which discussed the addition of the exceeds authorized access definition, explained exactly why Congress decided to introduce the new definition. They said that the old language was more cumbersome and they wanted to simplify the statute. But they expressed no discomfort with the scope of exceeds authorized access. Even Senator Leahy? No. Senator Mathias and Leahy also did not express any concerns about the exceeds authorized access definition. What about their words, This amendment removed from the sweep of the statute one of the murkier grounds of liability, under which a Federal employee's access to computerized data might be legitimate in some circumstances but criminal in other circumstances might be held to exceed his authorization. What do you think that means? What the Senators were discussing there was their concerns about Section 1030a3, a section that has not been charged in this case. In the 1984 version of the statute, you could violate Section a3 either by acting without authorization or by exceeding authorized access. But Senators Mathias and Leahy were concerned about imposing liability on Federal employees for the precursor of exceeding authorized access. So they simply removed that concept entirely from the statute and they made a3 a without authorization only provision. But they expressed no concerns about the concept of exceeding authorized access in other contexts. They preserved that concept in two other sections and added it to the section at issue here. So are you saying that a court should interpret one section differently than the other broader provision? Not at all, Your Honor. We believe that exceeds authorized access should have a uniform definition across the statute. The only issue with Section a3 for Senators Mathias and Leahy was imposing liability for exceeding authorized access at all. They did not think that that was an appropriate element to have in the statute because they were concerned about things like potential implications for FOIA. So they removed exceeds authorized access from that section and therefore there's no reason to interpret it in a way that addresses their concerns with respect to that section. Their concerns were fully addressed by removing the exceeds authorized access. Ms. Ellickson, the term exceeds authorized access is, of course, defined in 1038-6. Yes. Has that ever been modified? Is there any legislative history on that? I believe that that definition is the same definition that Congress enacted in 1986. I think it's unchanged as far as I can tell. And what's your view with respect to that definitional provision? Well, the Court must necessarily begin with the text of that definition in interpreting the statute. And we believe that it makes it clear that an employee exceeds authorized access when they go beyond restrictions that the employer has imposed or that the computer owner has imposed. Exceeds authorized access means to access a computer with authorization and to use such access to obtain information in the computer that the accessor is not entitled to so obtain. Yes. Yes, Your Honor. And we believe that that ‑‑ I see that I'm out of time, but if I may finish the question. We believe that that definition makes it clear that if you go beyond the limits of your authorization and you do something that you're not entitled to do, that you've exceeded authorized access. And the word so in that definition makes it clear that it wasn't ‑‑ Congress was not simply thinking about complete prohibitions on access. If they were, then the word so would become superfluous, and the definition could instead read that someone exceeds authorized access when they access a computer with authorization and use such access to obtain or alter information in the computer that the accessor is not entitled to obtain or alter. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Cjj Campbell (Utah), Dj